OPINION OF THE COURT
Alexander, J.
We are confronted in this case with the issue whether under the double jeopardy bar of CPL 40.20, a conspiracy prosecution in another jurisdiction bars a later New York prosecution for consummated result offenses arising out of the same criminal transaction. Although the Legislature addressed this *516 problem in 1984 by the enactment of CPL 40.20 (2) (g), which excepts from the double jeopardy bar cases in which the prior conspiracy prosecution occurred in "another state”, petitioner argues that because Thomas McNeil’s prior conspiracy prosecution was pursued by the Federal Government and the Federal Government may not be considered "another state”, the exception of CPL 40.20 (2) (g) does not apply. Additionally, petitioner contends that none of the other exceptions to the statutory bar to multiple prosecutions are applicable; thus the writ of prohibition should have been granted. For the reasons that follow, we conclude that petitioner’s contentions have merit and therefore grant the writ of prohibition barring Thomas McNeil’s prosecution.
I.
The essential facts out of which this prosecution arises are not in dispute. In 1982, an indictment was filed in Supreme Court, New York County, charging Thomas McNeil and his brother Samuel McNeil,[1] presidents of Triad Energy Corp. (Triad) and Everest Petroleum Inc. (Everest) respectively, with stealing money from those two businesses. The indictment contained two counts charging the crime of grand larceny in the second degree (Penal Law former § 155.35 [now Penal Law § 155.40]); the first count accused the McNeils of stealing property valued at more than $1,500 from Triad, and the second count charged that they stole property valued at more than $1,500 from Everest. Both the McNeils became fugitives and were not apprehended until 1987.
In July 1986, an indictment was filed in the United States District Court for the Southern District of New York charging the McNeils with one count of interstate transportation of stolen property (18 USC § 2314) and one count of conspiracy to commit that crime (18 USC § 371). The Federal indictment charged that "as part of said conspiracy,” the McNeils stole "the funds” of Triad and Everest and transported some of the stolen funds, "in excess of $284,000,” from New York to Zurich, Switzerland. The overt acts of the conspiracy count charged, inter alia, that Thomas McNeil drew checks totaling $174,000 payable to his brother Samuel McNeil on the ac *517 count of Everest and that the brother deposited checks totaling $284,000 into an account he had opened at the New York branch office of a Swiss bank. The substantive count charged the McNeils with having transported stolen securities and money valued at more than $5,000 between New York and Zurich, Switzerland.
In June 1987, following his apprehension by the Federal authorities, Thomas McNeil rejected the Federal prosecutor’s offer to dismiss the conspiracy count and pleaded guilty to the entire indictment. The court accepted his plea.
On his subsequent arraignment on the State charges, McNeil moved, under CPL 210.20 (1) (e), to dismiss the State larceny charges as violative of his statutory double jeopardy rights (CPL 40.20). Supreme Court denied the motion, concluding that although the State and Federal prosecutions were based on the same criminal transaction, the State larceny prosecution fell within the exception to the double jeopardy bar provided in CPL 40.20 (2) (g) which permits a defendant to be prosecuted again when the prior conviction for the same transaction was for conspiracy and was obtained in “another state.” The court concluded that CPL 40.20 (2) (g) was intended to apply to prior Federal as well as State convictions for conspiracy and that the language apparently limiting the exception to prior State prosecutions was a result of “inaccurate drafting.” The court held further that the exception in CPL 40.20 (2) (a) authorized the State larceny prosecution because the offenses of larceny and interstate transportation of stolen property contain different elements and the offenses charged involved "clearly distinguishable” acts.
After denial of the motion, the instant article 78 proceeding, seeking an order prohibiting Supreme Court and the District Attorney from prosecuting McNeil on the State larceny charges, was instituted in the Appellate Division. That court unanimously denied the application for a writ of prohibition, without opinion, and dismissed the petition (145 AD2d 997). The case is before us by permission of this court.
II.
The Legislature has decreed that a person may not be twice prosecuted for the same offense (CPL 40.20 [1]) and, with certain exceptions, may not be separately prosecuted for two offenses based on the same act or criminal transaction (CPL 40.20 [2]). CPL 40.10 (2) defines a criminal transaction as *518 "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture” (CPL 40.10 [2]).
Petitioner argues that because the Federal and State prosecutions encompass a single criminal transaction within the contemplation of CPL 40.20 (2),[2] prosecution of the State indictment should be barred because the exceptions set forth in paragraphs (a), (b) and (g) of that statute, the only exceptions arguably relevant, do not apply. The People respond that the State and Federal prosecutions are not based on the same criminal transaction and that, in any event, CPL 40.20 (2) does not bar the State prosecution because that prosecution falls within one of the exceptions set forth in paragraphs (a), (b) and (g).
A
We reject at the outset the People’s threshold argument that the State and Federal prosecutions of McNeil are not based on the same criminal transaction. The People contend that the State crime of larceny was completed when money was removed from the accounts of the victim businesses and that these thefts did not constitute an element of the Federal interstate transportation of stolen property charge because the Federal indictment only concerned the subsequent transportation of the stolen funds to Switzerland. This contention, however, overlooks the fact that the conspiracy count of the Federal indictment charges conduct which is at the very heart *519 of the State larceny charges — that as part of the conspiracy, McNeil "did steal, convert and fraudulently take for [his] personal use, the funds of Triad and Everest”. Thus, since that conspiracy count charges the very conduct that constitutes the crime of larceny, we conclude that the Federal and State prosecutions are based on the "same criminal transaction.”
The People contend, however, that the reference in the conspiracy count to McNeil’s involvement in the actual theft should be disregarded as mere surplusage and that the conspiracy count should be read narrowly as embracing only those elements necessary to establish the substantive offense of transporting stolen property interstate. These contentions must also be rejected. A conspiracy embraces all of the overt acts and substantive crimes in the particular criminal enterprise (People v Abbamonte, 43 NY2d 74, 85). Here, the conspiracy charged in the Federal indictment encompassed the entire scheme by the McNeil brothers to steal funds from Triad and Everest and convert them to their own use — precisely the crimes charged in the State indictment — and thus clearly relates to the same criminal transaction as does the State indictment. Thomas McNeil’s criminal enterprise consisted of stealing the funds of Triad and Everest. Each of these thefts was charged as part of the conspiracy, each was an "integral partQ of a single criminal venture” and thus together constitute a single "criminal transaction” under CPL 40.20 (2).
As we made clear in People v Abbamonte (43 NY2d 74, supra), the significant inquiry is not what overt acts were actually charged as part of the conspiracy but whether "the particular activity for which the State seeks to hold defendants responsible could have been alleged to support the [Federal] conspiracy charge” (People v Abbamonte, 43 NY2d 74, 84, supra; see also People v Vera, 47 NY2d 825, 826 [prior Federal conviction for conspiracy to distribute cocaine barred State prosecution for cocaine sale even though the Federal authorities were not aware of that sale]).
Thus, we conclude that the Federal and State prosecutions are based on the same criminal transaction and that prosecution of the State indictment is barred unless one or more of the exceptions specified in paragraphs (a) through (h) of CPL 40.20 (2) is applicable.
B
The People assert that the exception of subdivision (2) (g) *520 permits the State larceny prosecution. We conclude, however, that that subdivision by its language is limited to prior prosecutions in another "state.” Thus, it cannot be used here to permit McNeil’s State prosecution to proceed when his prior prosecution occurred in Federal court.
Subdivision (2) (g) permits a second prosecution for the same criminal transaction when "[t]he present prosecution is for a consummated result offense[3] * * * which occurred in this state and the offense was the result of a conspiracy, facilitation or solicitation prosecuted in another state.” The People urge that the word "state” should be interpreted to mean "jurisdiction” and thereby embrace Federal prosecutions. They argue that this was the intent of the Legislature as evidenced by the fact that the title of the amendment as originally introduced indicated that the amendment was designed to "permit New York State to prosecute substantive offenses where another sovereign has brought a related prosecution for inchoate crimes” (see, Assembly Mem, Bill Jacket, L 1984, ch 624, at 31) and by the further fact that, in their view, this amendment was designed to overrule People v Abbamonte (43 NY2d 74, supra) and Matter of Abraham v Justices of N. Y. Supreme Ct. (37 NY2d 560), both of which involved prior Federal prosecutions for conspiracy.
These arguments are unavailing. A fundamental rule of statutory construction is that the Legislature is presumed to mean what it says and when the language of a statute is unambiguous, it is to be construed "according to its natural and most obvious sense, without resorting to an artificial or forced construction” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94). Indeed, when a statute is free of ambiguity, a court should construe it so as to give effect to its plain meaning unless that construction would lead to an "absurd or futile” result (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675; New York State Bankers Assn. v Albright, 38 NY2d 430, 436-437). Differentiating between "state” and "jurisdiction” is not absurd or futile but is a distinction the Legislature has drawn in drafting other exceptions to the double jeopardy bar and is consistent with the legislative purpose of providing enhanced protection *521 against repeat prosecutions. The initial draft of the bill adding subdivision (2) (g) referred to "[] previous prosecution occurring] in another jurisdiction * * * for the offense of conspiracy * * * an offense defined in the federal Organized Crime Control Act of 1970, (18 U.S.C.§§ 1961 et seq.) or * * * a criminal enterprise offense similar to that defined in such act” (A 6308/S 5157, 1983-1984 Regular Sessions). This language was not included in the bill as passed, however; rather, references to the Federal "Organized Crime Control Act” and "criminal enterprise” were deleted and the phrase "other state” was substituted for the phrase "another jurisdiction.”
It is abundantly clear that when the Legislature intends to broaden the scope of an exception to the double jeopardy bar of CPL 40.20 (2) it has no difficulty doing so. For example, in subdivision (2) (f), cases involving offenses constituting a violation of a statutory provision of "another jurisdiction” have been excepted, and in subdivision (2) (h), racketeering offenses in violation of Federal law and enterprise corruption or racketeering offenses in violation of the law of another State likewise have been expressly excepted.
The People assert, however, that subdivision (2) (g) was enacted to overrule our decisions in People v Abbamonte (43 NY2d 74, supra) and Matter of Abraham v Justices of N. Y. Supreme Ct. (37 NY2d 560, supra) to permit a successive prosecution in this State for a result offense, after a Federal prosecution for a conspiracy to commit that offense. These cases, both involving Federal narcotics prosecutions, were decided in 1977 and 1975 respectively without any legislative response. It was not until after we decided Matter of Wiley v Altman (52 NY2d 410) in 1981 that the Legislature addressed the issue. Matter of Wiley held that a prosecution in the State of Maryland for conspiracy to commit a murder was a bar to a subsequent New York prosecution for the actual murder. Although the legislative history of the amendment does not reveal reasons for doing so, the Legislature apparently chose to limit the (2) (g) exception to the specific problem illustrated by Matter of Wiley, a prosecution for conspiracy occurring in another State. We have only recently observed that "[e]ach of the statutory exceptions to the general rule proscribing successive prosecution for offenses arising from the same transaction was drafted to address a particular situation in which the statutory prohibition was deemed overly broad” (Matter of Kaplan v Ritter, 71 NY2d 222, 229). Since the Legislature itself has expressly restricted the exception of (2) (g) to con *522 spiracy convictions obtained in "another state”, we have no occasion to give that language a more expansive interpretation.
C
The People’s argument that the exceptions of CPL 40.20 (2) (a) and (b) permit the State prosecution is unpersuasive and also must be rejected. Separate prosecutions are permissible under subdivision (2) (a) when "[t]he offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable”. Although it may be true, as the People assert, that the Federal Government had only to prove that McNeil knew the money involved in the interstate transportation was stolen and not that he stole it, the fact remains that the Federal indictment charges, as one of the overt acts of the conspiracy, that McNeil "did steal, convert and fraudulently take for [his] personal use, the funds of Triad and Everest”. Thus the "acts” establishing the offenses are not "clearly distinguishable.” Indeed it is the same theft " 'charged and proved and for which a conviction was had’ ” (Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560, 567, supra) that constitutes the State larceny charges.
Also inapplicable is the exception of CPL 40.20 (2) (b) which permits successive prosecutions when "[e]ach of the offenses * * * contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil”. The Federal crime of interstate transportation of stolen property and the State crime of larceny are both designed to punish thieves and to protect property owners from thefts. In making the interstate transportation of stolen property unlawful, Congress intended to aid States in detecting and punishing criminals who used the channels of interstate commerce "to make a successful getaway and thus make the state’s detecting and punitive processes impotent.” (United States v Sheridan, 329 US 379, 384.) By making it more difficult for thieves and their fences to escape with or trade in stolen property, the Federal statute grants greater governmental protection to property owners than they would otherwise enjoy (United States v McClain, 545 F2d 988, 994). Similarly, the larceny statute is intended to punish thieves and to protect the interests of property owners (see, People v Lennon, *523 80 AD2d 672, 673). Because the Federal and State offenses at issue here are designed to prevent the same evils, the instant case falls outside the exception of CPL 40.20 (2) (b).
Accordingly, the judgment of the Appellate Division should be reversed, without costs, and the petition granted.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Judgment reversed, etc.

. Although both Thomas and Samuel McNeil were charged in both the Federal and State indictments, only the charges against Thomas McNeil are involved in this appeal, Samuel McNeil having pleaded guilty to the State indictment.

. CPL 40.20 (2) provides as follows:
"A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:
"(a) The offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or
"(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil; or
* ** *
"(g) The present prosecution is for a consummated result offense, as defined in subdivision three of section 20.10, which occurred in this state and the offense was the result of a conspiracy, facilitation or solicitation prosecuted in another state.”

. CPL 20.10 (3) defines a result offense as follows: "[w]hen a specific consequence * * * is an element of an offense, the occurrence of such consequence constitutes the 'result’ of such offense. An offense of which a result is an element is a 'result offense.’ ”