OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiffs moved for summary judgment in all three actions for declaratory judgment that Local Laws 1991, No. 5 of Erie County (hereinafter County Law) is unconstitutional under the United States and New York Constitutions. Defendant did not cross-move for summary judgment; however, defendant did not assert that any factual issue exists in these actions, and asserted that the County Law was constitutional as a matter of law. Therefore, this court will treat the matter as submitted for determination by all parties.
The undisputed history of the County Law and related State laws is as follows: In 1974, the State Legislature enacted a "Unit Pricing Law” (L 1974, ch 581), the purpose of which was to provide consumers with "information needed to effectively compare retail product prices by instituting unit pricing of certain consumer commodities.” (1 NYCRR 345.1.) That law has undergone amendments and reenactments and is now in effect as section 214-h of the Agriculture and Markets Law.
In 1976, the State Legislature enacted an "Item Pricing Law” (L 1976, ch 558). Prior to its enactment, there was no requirement that individual food items be individually marked with a price. During the 1970’s, however, technological advances had resulted in the introduction of laser scanning of UPC codes in grocery stores, obviating the need for a cashier to enter a price marked on the product. The Legislature feared that in the absence of legislation, retailers would *52 discontinue use of item pricing once laser scanning was in place. The bill had a two-year sunset provision, recognizing that computer technologies, if properly tested, could eliminate the need for item pricing. The memoranda accompanying the bill also recognized that enforcement could become difficult if, at a later time, a significant increase in the number of retail stores using laser scanning occurred. At the time of enactment, only 4 to 5 stores throughout the State used laser scanning. (See generally, Budget Report to Bill A. 11112-c, 1976.)
Various extensions to the legislation occurred in 1977, 1978, 1981, 1985, and 1989. The extension in 1989 was predicated upon the Legislature’s working toward a permanent bill. (See generally, Governor’s Approval Mem to L 1989, ch 577, 1989 NY Legis Ann, at 255.) While various item pricing bills were introduced in the Legislature prior to the 1991 sunset date, no bill was ever enacted or extended. Thus, the State Item Pricing Law merely expired.
Following the expiration of the State Item Pricing Law, various localities, including Erie County, sought to enact an Item Pricing Law. To assist this end, the New York State Consumer Protection Board drafted model legislation, based, in part, on the various bills introduced. After several piecemeal reworkings of the model legislation, the Erie County Legislature adopted the County Law.
Pursuant to the Municipal Home Rule Law and the Erie County Charter, the proposed legislation was made subject to public hearing. The notice of public hearing was published in various local papers as follows:
"notice is hereby given that the Erie County Legislature on the 17th day of October, 1991, adopted Local Law Intro. No. 11 — 1991 (Print 3) in relation to item pricing in retail food establishments.
"A public hearing will be conducted by County Executive, Dennis T. Gorski, in the Erie County Executive Conference Room on the 16th floor of the Rath Building, Buffalo, New York, 14202, on Wednesday, October 30, 1991 at 2:00 P.M., to hear all persons interested in this matter.”
The public hearing was held, and the law executed by the County Executive, and filed with the Secretary of State on December 9, 1991.
Plaintiffs claim that the County Law is improperly enacted and/or unconstitutional in that: (1) There was inadequate *53 notice of public hearing; (2) That there was no authority for its enactment under the Municipal Home Rule Law in that the subject matter is preempted by and/or in conflict with State legislative policy; (3) That it violates the Equal Protection Clauses of the United States and New York Constitutions; (4) That the law does not bear a substantial relation to a legitimate authorized purpose in violation of the Due Process Clauses of the United States and New York Constitutions; (5) That the law is void for vagueness and, thus, violative of the Due Process Clauses of the United States and New York Constitutions; and (6) That its penalty provisions are excessive and constitute a taking in violation of the Due Process Clauses of the United States and New York Constitutions.
I.
Plaintiffs claim that the notice of public hearing regarding the County Law was inadequate in that it only alerted the public that item pricing in "food” stores was being considered while the County Law affects retail establishments other than food stores. The group of plaintiffs in these actions include supermarkets and wholesale distributors of supermarkets and convenience food stores. They argue, in support of other assertions, that the County Law discriminates against food stores. Clearly, the notice was adequate to inform them that the law being considered would affect them.
Public notices must be clear to laymen, so as to inform them that pending legislation may affect their interests. (Coutant v Town of Poughkeepsie, 69 AD2d 506 [2d Dept 1979]; Matter of Gardiner v Lo Grande, 92 AD2d 611 [2d Dept 1983].) It need only give the public "reasonable warning that property in which he has an interest may be affected and an opportunity by the exercise of reasonable diligence to determine whether such is the fact.” (Coutant v Town of Poughkeepsie, supra, at 512.) The public notice in question satisfies this requirement. It warned the general public as well as food stores that such legislation was being considered. It also gave sufficient opportunity to any establishment which sold retail foodstuffs to easily determine if such establishment would be affected. The contention that the notice was inadequate is without merit.
II.
Plaintiffs contend that the County had no authority to enact *54 the County Law in that the subject matter is preempted or in conflict with State law. These contentions are based upon the existence of the State Unit Pricing Law and that the expiration of the State Item Pricing Law was a pronouncement of State policy.
First, even under the expired State Item Pricing Law, there was no blanket prohibition of local legislation regarding item pricing. Section 214-i (8) of the Agriculture and Markets Law provided that: "Any local law, ordinance, rule or regulation relating to item pricing of consumer commodities must be consistent with the provisions of this section and the rules and regulations adopted hereunder.” The language of this section makes clear that the Legislature did not intend total preemption of this area, even when the State legislation existed. To now hold that the State Legislature’s exit from the item pricing arena created a greater preemption than existed under the law prior to expiration, would be to take an unreasonable and improper inference from the Legislature’s inaction. The expiration of thé State Item Pricing Law removed preemption and conflict. It did not create it.
Second, the State Item Pricing Law was not a part of the State Unit Pricing Law. The two laws were enacted at different times and addressed different legislative purposes. Furthermore, the State Unit Pricing Law does not even preempt localities from enacting unit pricing laws. Section 214-h (8) provides that: "Any local law, ordinance, rule or regulation relating to labeling, displaying or other disclosure of the price per measure of any commodity must be consistent with the provisions of this section and the rules and regulations adopted hereunder.” Even if the State Unit Pricing Law were considered to govern item pricing, there would be no total preemption. Only inconsistencies need be considered.
Third, for 15 years there was both a State Item Pricing Law and a State Unit Pricing Law. No inconsistencies between the two laws were raised in any reported case. No inconsistencies between the two laws were raised during the several legislative extensions which occurred in the State Item Pricing Law. No inconsistencies between any provision of the County Law and any provision of the State Unit Pricing Law are raised in this litigation. Plaintiffs allege a general inconsistency between the State Unit Pricing Law which deals with the display of price per measure and the County Law which deals with affixing of price tags to items based upon the County Law’s prohibiting that which the State Unit Pricing Law *55 allows. However, there is no pronouncement that the State Unit Pricing Law specifically "allows” anything. The State Unit Pricing Law regulates and requires certain disclosure and display. If the plaintiffs were correct, any local legislation on any subject would be prohibited on the theory that such legislation required something State law "allowed.”
There is nothing inherently inconsistent between a unit pricing law and an item pricing law. The State laws on these subjects stood side-by-side for 15 years. While the State Legislature is not subject to the limitations contained in the Municipal Home Rule Law, if there were inconsistencies between the two concepts, such inconsistency would be brought to the attention of the Legislature or the courts. There is no such inconsistency; therefore, the County had jurisdiction under the Municipal Home Rule Law to enact the County Law.
III.
Before addressing the constitutional challenges to the County Law, it is necessary to set forth the legal limitations to full review of the law before the court. The court is not a super-legislature called upon to review the wisdom of any law enacted. Nor can the court ignore valid constitutional challenges to a law, regardless of how well intentioned or necessary the law might be. This court has received numerous submissions from the amici, many private citizens and one of the parties on the need for item pricing and errors in laser scanning. Such submissions, while interesting, do not address the constitutional and legal issues before the court. Consequently, they cannot properly be considered, and are not to be part of the record.
The first constitutional challenge raised by plaintiffs is that the County Law violates the Equal Protection Clauses of the Federal and State Constitutions. The violation alleged by plaintiffs stems from an exception from the application of the law, found in section 1 (a), (b) and (c) thereof, extended to stores which either (a) are operated solely by the owners or their families (Mom and Pop stores); (b) gross less than $3 million annually (unless part of an affiliation of such stores) (unaffiliated convenience stores); or (c) engage primarily in sales of food for consumption. Plaintiffs claim that allowing an exception for Mom and Pop stores and for unaffiliated convenience stores, while requiring compliance of supermarkets and affiliated convenience stores, has no rational basis, and is violative of equal protection.
*56 The Fourth Department addressed a similar issue in the context of a constitutional challenge to the State Unit Pricing Law by one of the plaintiffs herein. In Wegman’s Food Mkts. v State of New York (76 AD2d 95 [4th Dept 1980]), the plaintiff’s challenge was based upon the different treatment of supermarkets from other unregulated retail stores under the Unit Pricing Law. The court noted that it may be wise or beneficial to extend the State Unit Pricing Law to retail stores unregulated under the law; however, the exclusion of unregulated stores will not render the law unconstitutional, as long as the primary focus of the law upon supermarkets was reasonable. The decision to require unit pricing in supermarkets was based upon an economic finding that the average consumer spends 13% of disposable income for food to be consumed at home. This was sufficient reason to target supermarkets for consumer legislation. The Fourth Department dismissed the equal protection argument on the basis that "[T]he legislative determination to include only food stores in the regulatory scheme, even though underinclusive, is not unreasonable.” (Wegman’s Food Mkts. v State of New York, supra, at 101.)
This case is indistinguishable from Wegman’s (supra). While there may be an advantage to consumers in requiring item pricing in all retail establishments, the record demonstrates that the need is greatest in supermarkets and other stores which use laser scanning equipment. Additionally, the record shows that the exceptions to the law’s application are based upon minimizing the burden of item pricing to small operations which cannot absorb the cost of compliance. These classifications are not unreasonable. Consequently, they do not violate the Equal Protection Clauses.
IV.
Plaintiffs also claim that the County Law is constitutionally infirm in that it fails to satisfy due process requirements of the State and Federal Constitutions. In this respect there are three contentions: First, that the County Law does not generally satisfy a rationality test; second, that the County Law fails to make any exception for sale items or to allow a general percentage exception previously found in the State law; and third, that the County Law creates a patchwork of excepted items.
As the Court noted in Wegman’s (supra, at 98): "[I]t is well settled that the due process clause affords little protection *57 from State regulation in the economic sphere. As long as the Legislature selects means which are reasonably calculated to serve a proper governmental purpose, the requirements of due process are satisfied. Only a minimal level of rationality is necessary to save an economic regulatory statute from constitutional attack on due process grounds, or to put it another way, only where the State interferes with a citizen’s property with 'rhyme or reason’ does a deprivation of due process occur.” In Wegman’s, the Court found the State Unit Pricing Law met this standard of rationality based upon the demonstrated need for unit pricing and that the law was logically related to this purpose.
Similarly, the County has demonstrated the need for item pricing and the County Law is logically related to this purpose. Under the standards of due process, the County Law is not such an unreasonable interference with plaintiffs’ rights as to constitute a violation of due process.
With regard to the specific contention regarding the failure of the County Law to provide for exceptions for sale items or to provide for a general percentage exception, the rationality test is met. While an exception for sale items or a general percentage exception might be a reasonable addition to an item pricing law, it is not constitutionally mandated.
With regard to the contention regarding the list of excepted items, the test is rationality. While a patchwork list of exceptions that bears no nexus to the legislation in question would be constitutionally improper, where the exceptions are "justified and related to the legislative objective,” they "should not be judicially disturbed.” (People v Abrahams, 40 NY2d 277, 285 [1976].)
Each of the exceptions is based upon a weighing of the need for item pricing, the difficulty in pricing certain food items and health and welfare considerations. Each exception is the result of rational consideration of these factors. Based upon the rationality standard to be employed, the list of exceptions is not a violation of due process.
V.
Plaintiffs’ contention that the County Law is unconstitutionally vague is based upon two alleged difficulties with the language of the County Law. The first is the application of item pricing to "food stores.” The plaintiffs contend that "food stores” is not sufficiently precise to define the application of *58 the entire item pricing scheme, and cite the Fourth Department’s decision in Bakery Salvage Corp. v City of Buffalo (175 AD2d 608 [4th Dept 1991]) in support of its argument. In Bakery Salvage, the term in question was "offensive or noxious odors.” The Court held such a standard void for vagueness because the ordinance’s application could not be determined simply from a reasonable reading of the ordinance. Whether something is "noxious” or "offensive” is by its nature subjective. Efforts within the ordinance to refer to "average odor sensitivity” to add some standard to the determination were not any more objective. In contrast, "food stores” can be given its normal meaning.
Furthermore, the same argument was advanced in Wegman’s (supra, at 101). There the Court determined that "food stores,” "consumer commodities,” and "toiletries,” were not unconstitutionally vague when employed in the State Unit Pricing Law. Neither is "food stores” unconstitutionally vague as it appears in the County Law.
The second contention regarding vagueness is more troublesome. Through an apparent error in drafting, the Legislature used the words "stock keeping unit” in several places within the law when the words "stock keeping item” were meant. All parties agree that "stock keeping unit” and "stock keeping item” have specific meanings within the industry and are specifically defined within the statute in accordance with their meanings within the industry:
"Section 2. Stock keeping unit; stock keeping item
"a. 'Stock keeping unit’ (SKU) shall mean each group of items offered for sale of the same brand name, quantity of contents, retail price, and variety within [various] * * * categories.
"b. 'Stock keeping item’ shall mean each item of a stock keeping unit offered for sale.”
The term "stock keeping unit” is employed within the general application provision of the law as follows:
"Section 1. Item pricing required
"Every person, firm, partnership, corporation or association which sells, offers for sale or exposes for sale at retail stock keeping units as defined in section two of this local law shall disclose to the consumer the item price of such stock keeping unit” (emphasis added).
Giving "stock keeping unit” its statutory and industry definí *59 tion either renders this general application section meaningless or converts the local law into a form of unit pricing instead of item pricing. As a result, plaintiffs contend, the law is either void for vagueness, or improper under the Municipal Home Rule Law as in conflict with or preempted by the State Unit Pricing Law. Defendant argues that a reading as a form of unit pricing is undisputedly unintended by the County Legislature and that the court is empowered to correct what it terms a "typographical” error or interpret the statute in such a way as to give the word "unit” a more common meaning which would fulfill the legislative intent.
Reading this statute as a form of a unit pricing law is absolutely contrary to the legislative intent or scope of the County Law. Additionally, such a reading would result in the impropriety of the law as in conflict with the State Unit Pricing Law. As alternate interpretations are available, and mindful of the presumption of constitutionality to which a law is entitled, such a reading will not be given.
Thus, we are left with a meaningless statute if the statutory and industry definition of "stock keeping unit” is employed. For this reason, defendant urges this court to correct the language to "stock keeping item” where appropriate, or to interpret "stock keeping unit” to mean "stock keeping item” when the language of the legislation calls for it to give it meaning in line with the legislative intent.
Whether or not the obvious mistake in legislation is to be considered "typographical” is not determinative of the court’s power to look beyond the words used in the statute. New York State Bankers Assn. v Albright (38 NY2d 430, 437 [1975], quoting United States v American Trucking Assns., 310 US 534, 543-544 [1940]) noted: " 'There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often the words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act.’ ” The Court of Appeals in Albright interpreted the Banking Law so as to restrict savings banks from offering "NOW” accounts even though no express restriction existed. The Court noted that a literal reading of the Banking Law would have permitted the NOW accounts, but that such a literal reading would be *60 "atomistic” and "blind to the legislative history antecedent to their enactment.” (Supra, at 437.)
Similarly, the Court of Appeals refused a literal reading of the Executive Law in Matter of Long v Adirondack Park Agency (76 NY2d 416, 420 [1990]) where such a reading in "vacuum-like isolation with absolute literalness * * * would be contrary to the purpose and intent of the underlying statutory scheme and would conflict with other operative features of the statute’s core overview procedures.”
In contrast, courts have consistently held that there should not be judicial interpretation if the language of legislation is clear and unambiguous. However, it is often recognized that a threshold determination of legislative intent is in order. "Inquiry into the meaning of statutes is never foreclosed at the threshold; what happens is that often the inquiry into intention results in the conclusion that either there is no ambiguity in the statute, or that for policy or other reasons the prior history will be rejected in favor of the purportedly explicit statement of the statute.” (New York State Bankers Assn. v Albright, supra, at 436.) Many cases cited by plaintiffs have come to precisely this conclusion. After inquiring into the legislative intent and giving the plain words a reasonable meaning, the courts conclude that no ambiguity exists. (See, Finger Lakes Razing Assn. v New York State Razing & Wagering Bd., 45 NY2d 471 [1978]; Matter of Erie County Agric. Socy. v Cluchey, 40 NY2d 194 [1976]; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669 [1988]; Matter of Schmidt v Roberts, 74 NY2d 513 [1989].) But in each of those cases, the literal reading of the statute provided a meaningful statute which could be constitutionally upheld. In contrast, the literal reading of the County Law, using the statutory definition of "stock keeping unit,” cannot result in any meaningful statute which could be constitutionally upheld. Under such circumstances interpretation of "unit” where it is used in the middle of section 1, in the first sentence of section 3, in sections 3 (c); 4 (b) and 4 (c) is appropriate. In each of these places in the County Law, a dictionary definition of "unit” is in order, equating the meaning of the word to "item.” (Foss v City of Rochester, 65 NY2d 247 [1985].)
Under this interpretation of "unit” in those specified places with the County Law, the County Law is not unconstitutionally vague.
*61 VI.
Plaintiffs contend that the penalty provisions of the County Law are excessive and unreasonable and consequently violate the Due Process Clauses of the Federal and New York State Constitutions. The penalty provisions are contained wholly in section 4 of the County Law. The language which is to be examined is found in paragraph (a) which provides: "Any store found in violation of this local law shall be subject to the following penalties: for the first violation in any twelve month period the store shall pay a penalty of twenty-five dollars for each of the first four violations; fifty dollars for each of the next twelve violations; and seventy-five dollars for each of any additional violations. For a second or subsequent violation in any twelve month period, the above penalties shall be doubled.” Plaintiffs contend that this language empowers the County to impose penalties with respect to every stock keeping unit within the store. Section 4 (d) also empowers the County to inspect and impose penalties daily. Plaintiffs also contend that the language regarding second or subsequent violation allows for doubling, redoubling and re-redoubling, ad astre. Defendant contends that fines can only be doubled once based upon the language "above penalties.” With regard to frequency of inspection and with regard to the number of stock keeping units that can be subject to violation within one inspection, defendant offers the affidavit of Edwin E. Gonsiorek, the Director of the Bureau of Weights and Measures for the County of Erie. Mr. Gonsiorek also offers, as exhibit B, the procedure for inspection and assessment of fines, which had been approved by John C. Loffredo, the Commissioner for the Department of Public Works. The procedure limits inspection to 500 stock keeping units within the store and provides for a random selection of which units will be inspected. The procedure does not limit the frequency of inspections; it specifies that each establishment should be inspected annually, but that those establishments with a history of violations should be inspected more often.
While Mr. Gonsiorek and Commissioner Loffredo do not intend, at this time, to inspect more than 500 different items in any one inspection, they are free to change this procedure under the County Law. Potentially, without limiting the number of items, the penalty provisions could result in millions of dollars in fines, particularly if there are daily inspections. Even if the number of items were limited to 500 as indicated *62 in exhibit B, the violations could total $37,000 in fines for a single establishment for a single day. Again, if allowed to return on a daily basis, annual fines for each store could top $11,000,000. When multiplied by the number of stores in each chain, plaintiff Top’s could have annual fines for its 71 stores in excess of $750,000,000. Such potential for fines is so excessive that it would be grossly disproportionate to the offense and a shock to one’s sense of fairness. (Matter of Pell v Board of Educ., 34 NY2d 222, 233 [1974].)
No penalty has yet been imposed. It may be the case that no penalty so excessive and so disproportionate to the offense will be imposed. However, plaintiffs and others similarly situated should have the ability to measure the risk of violation under the penalty provisions. As presently constituted, there is no such ability. For this reason, the penalty provisions are violative of plaintiffs’ right to due process.
There is no express severability clause contained in the County Law. However, the court may find implied severability if "the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether.” (Matter of Westinghouse Elec. Corp. v Tully, 63 NY2d 191 [1984].)
The purpose of the legislation is to require the affixation of price labels to individual items. The penalty provisions are merely a method of enforcing the purpose. Thus, they can be excised from the rest of the legislation without affecting, in any manner, its purpose. The inescapable conclusion is that the Legislature, if invalidity of the penalty provisions were foreseen, would have wished the remainder of the County Law to stand. Thus, severability may be imposed, and the County Law may stand, without the unconstitutional penalty provisions.
For the foregoing reasons, the plaintiffs’ motions are granted in part and denied in part. The County Law is declared to be constitutional excepting the penalty provisions which are declared to be unconstitutional and are to be excised from the remainder of the County Law. In sum, the County item pricing statute is constitutional but presently unenforceable in that the statutory penalty provisions have been determined to be unconstitutional and stricken.