Gabrielli, J.
 

 Petitioners were each given substantial prison terms upon their conviction, following a jury trial, of conspiring to violate Federal drug control laws (US Code, tit 21, § 812; § 841, subd [a], par [1]; § 841, subd [b], par [1], cl [A]), and their convictions were affirmed (United States v Sisca, 361 F Supp 735, affd 503 F2d 1337, cert den 419 US 1008). In this article 78 proceeding they seek to prohibit their subsequent prosecution by State authorities for the crime of criminal possession of dangerous drugs in the first degree (Penal Law, § 220.23, repealed L 1973, ch 276, § 18) on the ground that the Federal prosecution and convictions bar the present State indictments.
 

 The principal issue presented is whether petitioners may now be prosecuted for criminal possession of dangerous drugs where one of the overt acts alleged and proved in their Federal conspiracy prosecution was possession of the same drugs which form the basis of the State prosecution. Resolution of the issue turns on the meaning and effect of CPL 40.20 which, insofar as is here pertinent, reads:
 

 "2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:
 

 "(a) The offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or
 

 "(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil; or
 

 
 *563
 
 "(c) One of such offenses consists of criminal possession of contraband matter and the other offense is one involving the use of such contraband matter, other than a sale thereof’.
 

 The facts are not in dispute and may be briefly summarized. Information obtained from electronic and visual surveillance conducted by the New York Joint Task Force between September 28, 1971 and December 15, 1971 disclosed that petitioners and others were part of a large, wholesale narcotics distribution organization operating in New York City, Westchester County and New Jersey. On the morning of December 15, 1971, petitioners Willie Abraham, Margaret Logan and Walter Grant were observed entering the Bronx, New York, residence of petitioner Robert Hoke and his wife, Lily, carrying empty shopping bags or, in Grant’s case, with a collapsed valise. When they departed, Abraham, Logan and Grant left with their once empty receptacles, filled. They were then followed to different distribution points where they were arrested. Searches conducted incident to the arrests revealed that they each had pver pne pound of heroin in their possession. A subsequent search of the Hoke residence produced large amounts of narcotics, money, weapons and drug packaging materials.
 

 On December 28, 1971 petitioners were indicted by the Bronx County Grand Jury which, by five indictments (Nos. 32772-36/72), charged petitioners and Lily Hoke with criminal possession of a dangerous drug in the first degree. The indictments also charged petitioner Abraham with two counts of attempted murder, two counts of reckless endangerment in the first degree and possession of a weapon; and petitioner Hoke and his wife Lily Hoke with two counts each of possession of a weapon and criminally using drug paraphernalia in the second degree.
 

 Thereafter, in November, 1972 petitioners and 14 others were indicted by a Federal Grand Jury for conspiring to distribute and possess with the intent to distribute narcotic drugs. The indictment set forth 18 overt acts that petitioners allegedly committed in furtherance of the conspiracy, the last of which stated that: "18. On or about December 15, 1971, WILLIE ABRAHAM, a/k/a J. G, WALTER GRANT, MARGARET LOGAN, and ROBERT HOKE did distribute and possess with intent to distribute a total of eight and one-half
 
 (8V2)
 
 kilograms of heroin hydrochloride, and, in addition, did
 
 *564
 
 obtain $70,000 income and resources from prior heroin distributions.”
 

 The Federal prosecution proceeded to trial first. The Government produced credible evidence of petitioners’ guilt and, specifically, established the overt act alleging petitioners possessed heroin with the intent to distribute the same. As noted, petitioners were convicted and their appeals were unavailing.
 

 Concluding that section 40.20 barred the State prosecution, the Appellate Division granted the petition and prohibited respondents "from trying petitioners pursuant to separate indictments (Ind. nos. 32/72-36/72) charging each of them with the crime of criminal possession of a dangerous drug”. Two Justices dissented on the ground that prohibition does not lie. We modify to the extent of conforming the Appellate Division order to the parties and relief sought in the petition; and otherwise, we affirm.
 

 A threshold question is raised concerning whether this article 78 proceeding in the nature of prohibition should be entertained. While we recently have had occasion to delimit the scope of this extraordinary remedy
 
 (Matter of Nigrone v Murtagh,
 
 36 NY2d 421;
 
 Matter of State of New York v King,
 
 36 NY2d 59), the instant proceeding fits the traditional mold of the ancient writ which, it has often been held, lies to test whether a court is acting in excess of its jurisdiction, for example, by permitting a second criminal action to be based on a prior prosecution
 
 (Matter of Kraemer v County Ct. of Suffolk County,
 
 6 NY2d 363, 365, and cases cited therein; see, also,
 
 Matter of Lee v County Ct. of Erie County,
 
 27 NY2d 432), and is thus reviewable. Indeed, we have recently entertained and reviewed two article 78 proceedings brought on similar grounds
 
 (Matter of Cirillo v Justices of Supreme Ct. of State of N. Y.,
 
 34 NY2d 990;
 
 Matter of Abbamonte v Justices of N. Y. Supreme Ct. of N.Y. County,
 
 33 NY2d 737).
 

 A Fifth Amendment double jeopardy objection was raised in the court below and, while it is true, as petitioners claimed, that
 
 Benton v Maryland
 
 (395 US 784) makes that proscription applicable to the States, the objection predicated thereon is groundless. Invoking the so-called "dual sovereignties” doctrine, the United States Supreme Court has held that a subsequent State prosecution based on the same facts and conduct underlying a prior Federal prosecution is
 
 not
 
 violative of the double jeopardy proscription
 
 (Bartkus v Illinois,
 
 359 US 121; cf.
 
 Abbate v United States,
 
 359 US 187;
 
 United States v
 
 
 *565
 

 Lanza,
 
 260 US 377; but see
 
 Martin v Rose,
 
 481 F2d 658, 660; Pitler, New York Criminal Practice, p 63, which questions the soundness of the holding in the
 
 Bartkus
 
 case) and, thus, we need not consider this issue at any length (see
 
 Matter of Klein v Murtagh,
 
 34 NY2d 988, affg on opn below 44 AD2d 465, 468-470).
 

 Prior to the advent of the Criminal Procedure Law, it was unclear whether New York recognized the dual sovereignties doctrine (see Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.20, p 106). True, on several occasions we barred a State prosecution based on the same conduct as a prior Federal prosecution. However, in each such instance, the later State prosecution was for the same identical
 
 offense
 
 as the Federal one
 
 (People v Lo Cicero,
 
 14 NY2d 374;
 
 People ex rel. Liss v Superintendent of Women’s Prison,
 
 282 NY 115;
 
 People v Mangano,
 
 269 App Div 954, affd 296 NY 1011; the rule of these cases is now codified in CPL 40.20 [subd 1]). In addition, we had permitted successive instate prosecutions for different offenses arising out of the same criminal transaction
 
 (Matter of Martinis v Supreme Ct. of State of N. Y.,
 
 15 NY2d 240; cf.
 
 People v Haupt,
 
 247 NY 369). “
 

 The Legislature, apparently dissatisfied with the Federal formulation, adopted in the Criminal Procedure Law (CPL 40.20, subd 2) what is generally known as the "same transaction” test (see
 
 Ashe v Swenson,
 
 397 US 436, 448 [Brennan, J., concurring]) which, in its purest form, prohibits a second prosecution to be based on the
 
 same transaction
 
 as a former one. However, aware of the pitfalls in so broad a rule (see Fisher, Double Jeopardy, Two Sovereignties and the Intruding Constitution, 28 U of Chi L Rev 591, 610-612; see, also,
 
 Ashe v Swenson,
 
 397 US 436, 453, n 7,
 
 supra),
 
 the Legislature followed, and wisely some of us think, the lead of the Model Penal Code (ALI, Model Penal Code, Proposed Official Draft [1962], § 1.09, subd [1], par [c]; § 1.10) and engrafted six exceptions upon it (see CPL 40.20, subd 2, pars [a]~[f]).
 

 With this background in mind, we turn to the claims advanced by the appellant District Attorney. He asserts that the State prosecution is not barred because the conspiracy prosecution did not, as he claims, involve the same criminal transaction and, further, that each of the first three lettered exceptions found in CPL 40.20 (subd 2) operates to permit the State action. We cannot agree with these contentions.
 

 
 *566
 
 The Criminal Procedure Law defines the term "criminal transaction” as used in 40.20 subd (2) as: "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.” (CPL 40.10, subd 2.) The Practice Commentary adds that the term "is primarily a factual concept denoting a group of acts or an episode of conduct which gives rise to one or more 'offenses.’ An 'offense’ [CPL 40.10] (subd 1) is primarily a legal concept, amounting to a violation of a penal provision which occurs upon the commission of a criminal act or transaction. * * * [0]ne act or 'criminal transaction’ may give rise to several statutory violations or 'offenses’ ” (Denzer,
 
 op. tit.,
 
 McKinney’s Cons Laws of NY, Book 11 A, CPL 40.10, pp 103-104).
 

 While recognizing that conceptually a given conspiracy might not be readily distinguishable from the criminal act which was its objective (see, e.g.,
 
 People v Spitzer,
 
 148 Misc 97), the District Attorney claims that the instant case is distinguishable because here there is a factual distinction between the acts establishing the conspiracy and the acts establishing the possessory crime. In support of this claim, he points to various facts (e.g., that the conspiracy involved others besides petitioners, that it may have existed prior to the date charged in the Federal indictment, that the purpose of the conspiracy was to indefinitely violate narcotics laws and that the Government’s case could have been proven without referring to the events of December 15) which he claims militate against finding a "time and circumstance” nexus between the Federal crime and the State charge. However, even assuming that no "time and circumstance” nexus exists, the argument fails for it may not be doubted that the criminal acts and conduct of petitioners were "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture”, thereby satisfying the paragraph "[b]” definition of "criminal transaction” (CPL 40.10, subd 2, par [b]). Moreover, a similar claim, made by petitioners on appeal from their convictions, was rejected by the Court of Appeals, Second Circuit, which found the evidence sufficient to establish "that each [petitioner] played a well defined role in a highly structured, disciplined and verti
 
 *567
 
 cally integrated criminal enterprise, and that the 'part with which [each] was immediately concerned, was dependent upon the success of the whole’ ”
 
 (United States v Sisca,
 
 503 F2d 1337, 1345,
 
 supra).
 
 We conclude, therefore, that petitioners’ acts and conduct constituted "integral parts of a single criminal venture” and, thus, a single "criminal transaction” within the meaning of CPL 40.20 (subd 2).
 

 The District Attorney’s second claim that the State prosecution is excepted by CPL 40.20 (subd 2, par [a]) may not prevail. Principally, it is asserted that the crimes of conspiring to distribute narcotics and of criminally possessing the same have substantially different elements and that the conspiracy could have been proven without showing petitioners’ possession of drugs on December 15, thereby demonstrating, as paragraph "[a]” requires, that the acts establishing the conspiracy were in the main clearly distinguishable from those establishing the possessory crime. However, as the Appellate Division noted, and appellant concedes, "the same possession of the same drugs was among the acts charged and proved and for which a conviction was had”. In such circumstances, we find no substance in the claim, hypothetically posited, that the Federal convictions could have been obtained without proof of possession of the drugs.
 

 Similarly wanting in merit is the District Attorney’s third contention that since conspiracy "presents a greater potential threat to the public than individual delicts”
 
 (Callanan v United States,
 
 364 US 587, 593), the paragraph "[b]” exception (CPL 40.20, subd 2, par [b]) is applicable. The argument misses the mark, however, for paragraph "[b]” does not permit separate prosecutions where one offense is greater or lesser than another. Rather, it requires that the offenses be "designed to prevent
 
 very different kinds of harm or evil”
 
 (italics supplied). Clearly, the Federal drug conspiracy laws and the State’s drug possession laws are aimed at the same evil — narcotics trafficking.
 

 The District Attorney next argues that paragraph "[c]” (CPL 40.20, subd 2, par [c]) shelters the State prosecution. This runs directly afoul of our determination in
 
 Matter of Cirillo v Justices of Supreme Ct. of State of N. Y.
 
 (34 NY2d 990, affg on opn below 43 AD2d 4,
 
 supra)
 
 and is, therefore, rejected.
 

 Finally, the District Attorney requests, properly we think, that action be taken to ameliorate the order entered below. While the Appellate Division order purports to dismiss five
 
 *568
 
 indictments (Nos. 32/72-36/72), it is obvious from the language employed in the order and the accompanying opinion that the Appellate Division intended only to order dismissal of the drug possession charges, a determination with which we agree.
 
 *
 
 Thus, the Appellate Division order should be modified by striking therefrom the ambiguous reference to the indictment numbers.
 

 Accordingly, the judgment of the Appellate Division should be modified by striking therefrom the following: “(Ind. nos. 32/72-36/72)”; and, as so modified, affirmed.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Judgment modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 *
 

 Indictment No. 34/72 was not even included in the petition; Lily Hoke, charged in No. 35/72, is not a party herein; and, as stated previously, the indictments charged crimes other than criminal possession of dangerous drugs.