OPINION OF THE COURT
Herbert I. Altman, J.
Defendant Gilbert Wiley (hereafter referred to as the defendant) moves, pursuant to CPL 210.20 (subd 1, par [e]), to dismiss the indictment, which charges him with the class A felony of murder in the second degree, on the ground that the prosecution is barred by reason of a previous prosecution. In April, 1979, the defendant was indicted in the State of Maryland, along with codefendant Dennis Wise and another, on the charge that he conspired with them to murder one Robert Addison. The defendant was acquitted of that conspiracy charge in September, 1979, upon a jury verdict. The narrow issue presented by this motion is whether the Maryland *115 conspiracy statute (Ann Code of Md, art 27, § 38) and the New York murder statute (Penal Law, § 125.25) "are designed to prevent very different kinds of harm or evil” (CPL 40.20, subd 2, par [b]).
The acts allegedly committed by the defendant which underlie both the Maryland and New York prosecutions are substantially the same. He is charged with having importuned and directed codefendant Wise to go from Maryland to New York to kill Robert Addison. Although the accomplished murder of Mr. Addison was not an element of the Maryland prosecution, such fact was sought to be proved in that State as an overt act in furtherance of the conspiracy. It is charged that codefendant Wise shot and killed Mr. Addison in New York on February 17, 1979.
I
The motion before me raises no constitutional issues. The defendant apparently recognizes that the still viable "dual sovereignty” doctrine permits successive prosecutions based upon the same transaction or event (see United States v Lanza, 260 US 377; Abbate v United States, 359 US 187). It is for a Legislature and not the judiciary to bar separate trial by different States or by a State and the Federal Government (see Bartkus v Illinois, 359 US 121). Accordingly, the double jeopardy clause of the Fifth Amendment of the United States Constitution is not relevant to the instant motion.
II
Defendant’s motion to dismiss the indictment on the ground of previous prosecution is made pursuant to CPL 210.20 (subd 1, par [e]). That statute, in turn, refers to CPL 40.20, which provides, in subdivision 2 thereof, that a "person may not be separately prosecuted for two offenses based upon the same act or criminal transaction”. Six statutory exemptions to that language are then set forth. The New York statute does not recognize the dual sovereignty doctrine (save, in a limited way, by the sixth exception, the provisions of which are not applicable to this case). It is irrelevant, for purposes of the statute, whether the previous prosecution took place in New York or in another jurisdiction. The exception relied upon by the People as removing this case from the statutory bar against successive prosecutions for the same criminal transaction is found in CPL 40.20 (subd 2, par [b]), which permits *116 such successive prosecutions when: "Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil”.
To begin, the term "criminal transaction” is defined in CPL 40.10 (subd 2) as a group of acts either "(a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.” Both parties are in agreement that the Maryland and New York prosecutions involve the same criminal transaction.
This then brings us back to the exception at issue. For the People to succeed it must appear that (1) the Maryland and New York statutes, as defined, each contain an element which is not an element of the other, and (2) the two statutes are designed to prevent very different kinds of harm or evil.
The Maryland and New York statutes clearly each contain an element not found in the other. The key element of the New York statute (Penal Law, § 125.25) is an accomplished murder. The Maryland prosecution is founded upon a common-law offense, the gist of which is unlawful combination (not an element of the New York offense) and which requires no overt act to constitute the offense (see Wilson v State, 8 Md App 653, 671; Jones v State, 8 Md App 370; Piracci v State, 207 Md 499; Quaglione v State, 15 Md App 571).
In addition to the fact that the crimes charged each contain an element not contained in the other, the Court of Appeals has recognized that the crime of conspiracy and the crime which is the object of that conspiracy are two separate offenses (People v McGee, 49 NY2d 48). The court in McGee (supra, p 58) further stated that "[accessorial conduct may not be equated with mere membership in a conspiracy and the State may not rely solely on the latter to prove guilt of the substantive offense.”
Ill
We now come to the crux of the motion, that is, whether the Maryland and New York offenses "are designed to prevent very different kinds of harm or evil”. The defendant relies upon a trilogy of cases decided by our Court of Appeals *117 (hereafter jointly referred to as the trilogy) which involved successive Federal and New York narcotics prosecutions.
In the first of those cases, Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County (37 NY2d 560), the petitioners, who had been convicted in the Federal court of conspiring to distribute and to possess with the intent to distribute narcotic drugs, were charged in New York State, inter alia, with criminal possession of a dangerous drug in the first degree. The conduct constituting the State possession charge was alleged as an overt act in the Federal indictment. After rejecting the petitioners’ Fifth Amendment double jeopardy argument on the basis of the dual sovereignty doctrine, the Court of Appeals turned to an analysis of the pertinent New York statutes. It found that the acts involved in the successive prosecutions constituted a single criminal transaction. The exception contained in CPL 40.20 (subd 2, par [b]) was found to be inapplicable because "[c]learly, the Federal drug conspiracy laws and the State’s drug possession laws are aimed at the same evil — narcotics trafficking” (Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, supra, p 567).
The second case of the trilogy (in actuality four separate cases decided in the same opinion), People v Abbamonte (43 NY2d 74), involved defendants who had been convicted in the Federal courts of conspiracy to violate Federal drug laws and were then prosecuted for substantive State drug offenses allegedly committed during the period covered by the Federal conspiracy charges but, unlike the posture in Abraham (supra), not alleged as overt acts in the Federal prosecutions. In People v Abbamonte (supra, p 79) the Court of Appeals extended its Abraham holding and taught us that when the substantive State drug offense was not, but could have been, alleged and proved in the Federal conspiracy prosecution, the "subsequent State prosecution offends the statutory mandate.” The court repeated the steps taken in its analysis in the Abraham case and then concluded (supra, p 86): "The problems for prosecutors engendered by CPL 40.20 and the analysis applicable to criminal prosecutions are due, it bears repeating, to the embracive nature of the crime of conspiracy. With respect to more narrowly deñned substantive crimes there are no serious problems (cf. People v Lo Cicero, 14 NY2d 374, 379, supra). The public policy choice is either to avoid using the conspiracy alternative if double prosecution of offenders in *118 criminal partnership is regarded as desirable, or to redefine the distinctions in CPL 40.20 to permit, in some manner, an exception for conspiracy along with the other exceptions. Neither in policy nor logic should the accident of pleading allegations or proof upon the trial be determinative. The unsound paradoxes to which that would lead have been discussed and need no repetition.” (Emphasis supplied.)
In the final case of the trilogy, People v Vera (47 NY2d 825), the court once again extended its prior holdings and noted that they were applicable even if the State and Federal indictments resulted from separate investigations and if the Federal authorities were unaware of the particular sale which formed the basis of the State indictment. Regardless of such lack of knowledge, the State sale was nevertheless held to be an integral part of the Federal prosecution "because ’conspiracy is an embracive crime. It embraces all of the overt acts and substantive crimes in the persisting criminal enterprise’ ” (People v Vera, supra, p 826).
Understandably, the People do not rely upon the trilogy, but upon another case, Matter of Kessler v Sherman (41 NY2d 851), which contains no reference to the trilogy and to which, in turn, none of the cases in the trilogy refer. In Kessler the petitioner had directed the dredging of a channel on certain property in Shelter Island. The Attorney-General charged him, in the Shelter Island Justice Court, with alteration of a tidal wetland without a State permit in violation of the State Tidal Wetlands Act (ECL 25-0202). During the pendency of that charge the petitioner was charged with, and acquitted of, violating the Wetlands Ordinance of the Town of Shelter Island by conducting operations on town wetlands without a town permit.
In Kessler the Court of Appeals held that the exception contained in CPL 40.20 (subd 2, par [b]) took that case out of the proscription of successive prosecutions for the same criminal transaction. As to the difference in elements, it noted that one prosecution was founded upon the lack of a town permit while the other was founded upon the lack of a State permit. As to the requirement that the statutes seek to redress a very different kind of harm or evil, the court stated (supra, p 852): "we would note that the two laws differ materially in scope and purpose. The town ordinance is only concerned with the town’s interest in local wetlands, while the State law, which applies to a much broader area, seeks to carry out a uniform *119 State policy consistent with the ecology of the State wetlands areas in their entirety.”
IV
The issue presented by this motion is a close one and not altogether free from doubt. On balance, I believe that the two prosecutions involved are in fact intended to combat very different kinds of harm or evil or, to apply the language of the Court of Appeals analysis in Kessler, that they differ materially in scope and purpose.
It cannot be gainsaid that in the trilogy the Court of Appeals rested its holdings on the embracive nature of a conspiracy prosecution, while noting, in Abbamonte, that there are no serious problems with respect to more narrowly defined substantive crimes. However, the conspiracy involved in the Maryland prosecution of the defendant is of a wholly different nature than the conspiracies involved in the Federal prosecutions in the trilogy. The latter were wide-ranging conspiracies encompassing illegal agreements to traffic in narcotics over a lengthy period of time. Here, however, the alleged conspiracy was a limited one, partaking more of the nature of a narrowly defined substantive crime. The conspirators allegedly agreed merely to have Robert Addison killed and did not agree to engage in wide-ranging criminal conduct. This distinction, standing alone, would not serve to bring this case out of the embrace of the trilogy and into the open arms of Kessler.
Another and more important distinction between this case and the trilogy is that of geographical jurisdiction. In the trilogy all of the criminal acts committed constituted both Federal and State crimes because of the overlapping jurisdiction of the sovereignties involved. Here, however, the States involved are situated hundreds of miles apart and neither has the ability to prosecute crimes which take place wholly in the other State.
In the trilogy, all of the criminal acts involved could have been prosecuted in either the Federal or the State court. In Kessler a different situation prevailed. Only the Attorney-General could have prosecuted for the violation of the State Tidal Wetlands Act and only the Town Attorney could have prosecuted for violation of the local wetlands ordinance. Here, it would appear that Maryland could not have prosecuted for the crime of murder committed in New York and certainly, *120 had the conspiracy (which under Maryland law required no overt act) not culminated in the murder in New York, that is, had it remained wholly in Maryland and terminated after the reaching of the illegal agreement, New York could not have prosecuted for the Maryland conspiracy.
The clear rationale underlying the trilogy is that the crime charged in New York could have been charged and prosecuted in the Federal conspiracy. Here, the New York crime could have been charged as no more than an overt act in Maryland and could not have been charged there as an independent crime. It would thus appear that the Court of Appeals reference to the embracive nature of conspiracy has little relevance to this case, where such embracive nature did not permit Maryland to charge the New York crime qua crime.
As noted above, the gist of the Maryland crime is the unlawful combination. No overt act is required. In a sense, then, the attempted proof of the New York murder as an overt act in the Maryland prosecution was surplusage. The Maryland crime was completed when the unlawful agreement was reached in Maryland. At that time no act had yet been committed in New York and Mr. Addison was alive. Clearly, the harm or evil sought to be prevented in Maryland had been accomplished. The harm or evil sought to be averted in New York had not yet taken place. A completed crime had taken place in Maryland which could only be prosecuted in Maryland and not in New York and no crime had taken place in New York. If it were to be held that the statutes were directed at the same kind of harm or evil, it would follow that, at the conclusion of the unlawful conspiracy in Maryland, New York had no interest in whether Mr. Addison lived or died. This clearly cannot be true.
A murder was apparently committed in New York. I do not believe that a conspiracy prosecution in Maryland, aimed at Maryland conduct, in which the fact of the murder was but an overt act, and not a fact essential to that prosecution, bars a New York prosecution for the murder. Accordingly, defendant’s motion is denied.
It nevertheless should be noted that this defendant never left Maryland. His mere membership in a Maryland conspiracy, standing alone, may not be a sufficient predicate for accessorial liability in New York (compare Penal Law, §§ 105.05, 20.00; see People v McGee, 49 NY2d 48, 57-59, supra). That issue is not now before me and should not *121 prevent New York from seeking to establish defendant’s criminal liability for the crime of murder.