OPINION OF THE COURT
Martin Marcus, J.
On May 10, 2013, the defendant was indicted by the grand jury of Bronx County and charged with scheme to defraud in the first degree (Penal Law § 190.65 [1] [a]), and identity theft in the second degree (Penal Law § 190.79 [3]). In an omnibus motion, the defendant seeks, inter alia, dismissal of both counts of the indictment, the scheme to defraud count on statutory double jeopardy grounds, and the identity theft count for legal insufficiency of the evidence. For the reasons set forth below, the defendant’s motion to dismiss the indictment is granted.
The Scheme to Defraud Count
Penal Law § 190.65 (1) (a) provides that the crime of scheme to defraud in the first degree is committed by a person who: “engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons.” According to the evidence before the grand jury, the defendant posted a solicitation on Facebook in which she pretended to be the paternal aunt of Noah Pozner, one of the victims of the Sandy Hook Elementary *880 School shooting in Newtown, Connecticut, and asked for money for the supposed purpose of paying for his funeral and the funerals of other victims. In response, a number of people sent the defendant money via a PayPal account. The defendant was arraigned on the indictment on May 13, 2013.
In connection with a federal investigation into her conduct, the defendant had previously been charged in the United States District Court of Connecticut with making false statements (18 USC § 1001). On June 6, 2013, she pleaded guilty not only to that charge, but also to wire fraud (18 USC § 1343), a charge which was filed the day of her plea. She was subsequently sentenced to eight months’ incarceration. Wire fraud is committed by a person who:
“having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.” (18 USC § 1343.)
In connection with her plea, the defendant admitted, inter alia, that, using Facebook, she had misrepresented herself to be the aunt of a child killed in the Sandy Hook shooting, solicited donations for a “funeral fund” for her supposed nephew and other shooting victims, and as a result, received donations that totaled less than five thousand dollars, which she returned after potential victim-donors discovered her misrepresentations.[1]
The defendant asserts that, as a result of her wire fraud conviction, CPL 40.20 (2) bars her prosecution for scheme to defraud in the first degree. According to that provision,
“A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:
“(a) The offenses as defined have substantially different elements and the acts establishing one of *881 fense are in the main clearly distinguishable from those establishing the other; or
“(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil.”
The People concede that the scheme to defraud count and the federal wire fraud conviction are based on the same “criminal transaction.”[2] 3**They contend, however, that the defendant may still be prosecuted for the state offense because the prosecution falls within both of the exceptions contained in CPL 40.20 (2). Neither applies in this case.
First, the offenses as defined do not, within the meaning CPL 40.20 (2) (a), “have substantially different elements,” nor are “the acts establishing one offense ... in the main clearly distinguishable from those establishing the other.” Considering the first of these two prongs, it is evident that each crime has elements the other does not. Scheme to defraud in the first degree requires that the defendant actually “obtain[ ] property from one or more . . . persons” (Penal Law § 190.65 [1] [a]), while wire fraud does not. Wire fraud requires the transmission of “any writings, signs, signals, pictures, or sounds” by use of “wire, radio, or television communication in interstate or foreign commerce” (18 USC § 1343), while scheme to defraud in the first degree does not. The question is not, however, whether the offenses have any different elements, but whether they have “substantially different elements.” I find that they do not.
As the Court of Appeals has recognized, “the Legislature in amending the Penal Law to add crimes based on a scheme to defraud (Penal Law §§ 190.60, 190.65; L 1976, ch 384), modeled the offenses upon the Federal mail fraud statute.” (People v First Meridian Planning Corp., 86 NY2d 608, 616 [1995], citing William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60.)[3] Indeed, in explicat *882 ing the language the legislature used to define a scheme to defraud, the Court of Appeals has “look[ed] to Federal [mail fraud] precedents applying similar statutory language.” (First Meridian Planning Corp., 86 NY2d at 616.) Wire fraud is mail fraud’s “twin,”* **[4] and like mail fraud, requires a “scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.” (18 USC §§ 1343, 1341.)[5]
The “scheme constituting a systematic ongoing course of conduct” required for scheme to defraud is essentially the “scheme or artifice” required for both wire fraud and mail fraud. As one commentator has observed, although
“[s]ections 190.60 and 190.65 contain language not found in the federal mail fraud section referring to a scheme ‘constituting a systematic ongoing course of conduct . . . [,]’ [t]his does not introduce a new, different element of the offense, but codifies what is contained in the concept ‘scheme to defraud’ under the federal statute.” (Richard A. Givens, Additional Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, 1988 Pocket Part at 277.)
Similarly, the mens rea required for scheme to defraud, an “intent to defraud ... or to obtain property ... by false or fraudulent pretenses, representations or promises,” Penal Law *883 § 190.65 (1) (a), is also essentially the same as that required for wire fraud and mail fraud, since the purpose of the “scheme or artifice” required for those two crimes must be to “obtain[ ] money or property by means of false or fraudulent pretenses, representations, or promises.” (18 USC §§ 1343, 1341.)
The fact that scheme to defraud in the first degree requires that property be obtained from at least one victim also does not mean that the two crimes have “substantially different” elements. In Matter of Abraham v Justices of N.Y. Supreme Ct. of Bronx County (37 NY2d 560 [1975]), the Court of Appeals held that the prosecution of the defendant for criminal possession of dangerous drugs in the first degree (Penal Law § 220.23, as repealed by L 1973, ch 276, § 18), was barred because of a prior conviction in federal court for conspiring to distribute and possess with the intent to distribute narcotic drugs. (21 USC §§ 812, 841 [a] [1]; [b] [1] [A].) Because “the same possession of the same drugs was among the acts charged and proved and for which a conviction was had,” the Court found “no substance in the claim, hypothetically posited, that the Federal convictions could have been obtained without proof of possession of the drugs.” (Abraham, 37 NY2d at 567 [internal quotation marks omitted]; see also People v Abbamonte, 43 NY2d 74 [1977].) Similarly, here the claim, “hypothetically posited,” that the wire fraud conviction could have been obtained without proof that the defendant obtained property from at least one victim does not render the elements of scheme to defraud in the first degree and wire fraud substantially different.
Neither does the fact that wire fraud requires the use of “wire, radio, or television communication in interstate or foreign commerce” (18 USC § 1343), and that a scheme to defraud conviction, “hypothetically posited,” could be obtained without proof of this element. In People v Lo Cicero (14 NY2d 374 [1964]), the defendant was charged with a robbery for which he had been acquitted in federal court. The Court of Appeals held that “[t]he additional element of obstruction of interstate commerce, necessarily present in the Federal indictment, does not diminish the substantial identity of the two charges,” and dismissed the robbery charge. (Id. at 379 [citations omitted].) Here, too, despite the jurisdictional interstate commerce requirement for wire fraud,[6] that crime and scheme to defraud have substantially similar elements.
*884 In any case, the People’s argument fails when considering the second prong of CPL 40.20 (2) (a), which requires that “the acts establishing one offense [be] in the main clearly distinguishable from those establishing the other.” Here, the conduct constituting the federal crime and that constituting the state crime are, if not identical, certainly not “clearly distinguishable” from one another. Both are based on evidence that the defendant fraudulently posed on Facebook as Noah Pozner’s aunt, solicited donations supposedly to pay for his funeral and that of other victims, and thereby obtained money from unsuspecting contributors.
Alternatively, the People claim that the defendant’s prosecution for scheme to defraud in the first degree is not barred because it falls within the exception contained in CPL 40.20 (2) (b), since “[e]ach of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil.” As already noted, each offense does contain an element which is not an element of the other, satisfying the first prong of this exception. However, contrary to the People’s argument, the statutory provisions defining scheme to defraud and wire fraud do not meet the requirement of the second prong.
In People v Bryant (92 NY2d 216 [1998]), two defendants were convicted in federal court on four counts: bank robbery; assaulting and placing in jeopardy the lives of persons by the use of dangerous weapons during the course of that robbery; using and possessing certain firearms during the commission of a crime of violence punishable under federal law; and conspiracy against the United States. A third defendant was convicted of the second of these counts and a lesser included of the fourth. All three defendants were also prosecuted in Rockland County on charges arising out of the same criminal incident and were convicted there of possessing two defaced weapons. One was also convicted of attempted assault in the second degree for the shooting of a police officer, as a lesser included offense of attempted murder in the first degree.
In rejecting the defendants’ statutory double jeopardy challenge to their convictions, the Court of Appeals found that the *885 requirements for the state court convictions that the weapons were defaced and that the defendant convicted of attempted assault knew or reasonably should have known that his intended victim was a police officer rendered the elements of the state crimes “markedly different” from those of the federal offenses. (Bryant, 92 NY2d at 228.) The Court also held that the state and federal crimes were aimed at very different kinds of harm or evil, reasoning that the state weapons offense was specifically intended to curtail the availability of defaced firearms and that the crime of murder the defendants were charged with attempting to commit was specifically aimed at the prevention of the killing of police officers, an evil “neither addressed by, nor embraced within, the Federal provisions at issue.” (Id. at 229-230.)
In contrast, in Matter of Schmidt v Roberts (74 NY2d 513, 522 [1989]), the Court of Appeals held that a defendant convicted of the federal crimes of interstate transportation of stolen property (18 USC § 2314), and conspiracy to commit that crime (18 USC § 371), could not be prosecuted in New York for grand larceny in the second degree, former Penal Law § 155.35, now Penal Law § 155.40. The Court concluded that the federal and state crimes were not designed to prevent very different kinds of harm or evil, since “[t]he Federal crime of interstate transportation of stolen property and the State crime of larceny are both designed to punish thieves and to protect property owners from thefts.” (Id.) Similarly, the federal wire fraud statute and New York’s scheme to defraud are both designed to protect the unwary from schemes to deprive them of their property by fraud. Thus, scheme to defraud in the first degree and wire fraud are not, as CPL 40.20 (2) (b) requires, designed to prevent very different kinds of harm or evil. (See also Matter of Kaplan v Ritter, 71 NY2d 222, 230-231 [1987] [“counts in the New York County indictment, which charge petitioners with securities fraud and grand larceny, cannot be prosecuted (pursuant to exceptions in CPL 40.20 [2] [b] and [e]) in light of the prior Federal prosecution for RICO violations and fraud”].)
The conduct for which the defendant is charged with scheme to defraud in the first degree is, without question, reprehensible. Nevertheless, because the exceptions set forth in paragraphs (a) and (b) of CPL 40.20 (2) do not apply here, the defendant, having been convicted of wire fraud based on the same criminal transaction, can no longer be prosecuted for scheme to defraud in the first degree. Accordingly, count one of the indictment must be dismissed.
*886 The Identity Theft Count
The second count charges the defendant with identity theft in the second degree. In relevant part, Penal Law § 190.79 (3) provides that this crime is committed by a person who “knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, . . . and thereby . . . commits or attempts to commit a felony or acts as an accessory to the commission of a felony.” This indictment specifically alleges that the defendant “assumed the identity of an aunt of Noah Pozner” and thereby committed the class E felony of scheme to defraud in the first degree.
As Justice Donnino has observed, “[t]he core of the basic third-degree identity theft offense, a class A misdemeanor, parallels the crime of ‘criminal impersonation in the second degree.’ ” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.77.) Criminal impersonation in the second degree, Penal Law § 190.25 (1), is committed by a person who “[i]impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another.” The Second Department has held that “in order to be found guilty of this [form of criminal impersonation], the People must have established that [the defendant] impersonated a real person.” (People v Sadiq, 236 AD2d 638, 639 [2d Dept 1997].) As one court has held, relying on Sadiq, “in requiring that a defendant prosecuted for identity theft have assumed the identity of ‘another person,’ the legislature plainly contemplated criminal conduct committed against an actual victim—that is, an innocent person whose identity or information is actually stolen.” (People v Debranche, 38 Misc 3d 872, 875 [Crim Ct, NY County 2012].)
The evidence before the grand jury established that the defendant, although using her own name in perpetrating her fraud, claimed to be Noah Pozner’s paternal aunt. There was no evidence presented to the grand jury that Noah Pozner had a paternal aunt, and it is uncontested that he did not. As the People concede, because the person whom the defendant purported to be did not exist, count two must be dismissed.

. Stipulation of offense conduct, dated June 6, 2013 at 9; see also presentence report, dated Aug. 16, 2013, ¶ 59 (stating that the defendant agreed that the stipulation of offense conduct accurately detailed her participation in the offense). The defendant also admitted in the stipulation of offense conduct that when interviewed by Special Agents of the Federal Bureau of Investigation, she made false statements in an attempt to hide her conduct and avoid the consequences of her scheme.

. For these purposes,
“ ‘[c]riminal transaction’ means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective to constitute elements or integral parts of a single criminal venture.” (CPL 40.10 [2].)

. Justice Donnino noted that the crimes of wire fraud and crimes of scheme to defraud have been defined using “parallel language.” (William C. *882 Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60; see also People v Taylor, 304 AD2d 434, 435 [1st Dept 2003] [“The scheme to defraud statute (Penal Law §§ 190.60, 190.65) was derived from and patterned after the federal mail fraud statute” (citation omitted)]; People v Kaminsky, 127 Misc 2d 497, 501 [Sup Ct, NY County 1985].)

. Christopher Q. Cutler, McNally Revisited: The Misrepresentation Branch” of the Mail Fraud Statute a Decade Later, 13 BYU J Pub L 77 n 3 (1998); see also Carpenter v United States, 484 US 19, 25 n 6 (1987) (“The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here”). The legislative history of the wire fraud statute states that 18 USC § 1343, defining wire fraud, was designed as “a parallel [to the] provision now in the law for fraud by mail.” (United States v Garlick, 240 F3d 789, 792 [9th Cir 2001], quoting S Rep No. 44, 82nd Cong, 1st Sess at 19 [1951].)

. 18 USC § 1341 provides, in relevant part, that mail fraud is committed by a person who
“having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service.”

. See Neder v United States, 527 US 1, 20 (1999) (“Although the mail fraud and wire fraud statutes contain different jurisdictional elements [§ 1341 *884 requires use of the mails while § 1343 requires use of interstate wire facilities], they both prohibit, in pertinent part, ‘any scheme or artifice to defraud’ or to obtain money or property ‘by means of false or fraudulent pretenses, representations, or promises’ ”).