Matter of Dieffenbacher v Jackson (2020 NY Slip Op 08015)





Matter of Dieffenbacher v Jackson


2020 NY Slip Op 08015


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020

Before: Friedman, J.P., Kern, Scarpulla, Shulman, JJ. 


Ind No. 2278/19 2582/18 Appeal No. 12157 Case No. 2020-03021 

[*1]In the Matter of Raymond Dieffenbacher, Petitioner,
v
Hon. Melissa Jackson etc., et al.,Respondent. 


James R. Froccaro, Jr., Port Washington, for petitioner.
Letitia James, Attorney General, New York (Dennis A. Rambaud of counsel) , for municipal respondent.



Petition pursuant to CPLR article 78 for a writ of prohibition barring petitioner's prosecution under Indictment No. 2278/19, denied, and the proceeding dismissed, without costs.
Petitioner moved to dismiss the indictment pursuant to CPL 40.40, on the ground that it was barred by his plea of guilty in satisfaction of Indictment No. 2582/18. The court's ruling rejecting petitioner's statutory double jeopardy claim is reviewable by means of a writ of prohibition (see Matter of Abraham v Justices of N.Y. Supreme Ct. of Bronx County, 37 NY2d 560, 564 [1975]). However, petitioner fails to establish that he has a "clear legal right" to the relief sought (Matter of Brusco v Braun, 84 NY2d 674, 679 [1994] [internal quotation marks omitted]). For the reasons more fully discussed below, the indictments were not based on "the same "criminal transaction," as that term is defined by CPL 40.10(2), so as to cause the second prosecution to fall within the prohibition of either CPL 40.20(2) ("A person may not be separately prosecuted for two offenses based upon the same . . . criminal transaction," subject to enumerated exceptions) or CPL 40.40(2) (providing that offenses that are "joinable" in one accusatory instrument, by reason of their being part of the same criminal transaction, may not be separately prosecuted under specified circumstances, even if separate prosecutions would not otherwise be prohibited).
In essence, the wrongdoing charged in each indictment is the filing of fraudulent Medicaid reimbursement claims and related misconduct, such as payment of kickbacks. However, the indictments charge different specific criminal acts, which were perpetrated on different dates and over different time periods. Moreover, the indictments do not allege fraudulent billing of any of the same managed care organizations. While it appears that the different fraudulent acts charged in the two indictments had a similar modus operandi and were part of a common plan, this alone does not suffice to render them part of the same "criminal transaction" under CPL 40.10(2)(b) (defining "criminal transaction," in pertinent part, as conduct "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture").[FN1] In People v Dallas (46 AD3d 489 [1st Dept 2007], lv denied 10 NY3d 809 [2008]), which held that successive prosecutions of the defendant for different instances of criminal possession of forged instruments (first in Brooklyn, then in Manhattan) did not violate his statutory protection against double jeopardy, we explained: "The fact that defendant was in the business of selling counterfeit identifications, and that his conduct in both counties may have been admissible in both prosecutions . . . , did not make his possession of different documents at different times a single criminal transaction" (id., 46 AD3d at 490; see also People v Vesprey, 183 AD2d 212, 216 [1st Dept 1992] [in holding that separate prosecutions [*2]of the defendants for different criminal acts involving stolen credit cards, about three months apart, were permissible because the different acts did not constitute a single criminal venture, we observed that "the fact that a criminal has the same modus operandi and commits the same type of crime should not insulate him from successive prosecutions for separate and subsequent offenses"] [internal quotation marks omitted], lv denied 81 NY2d 894 [1993]).
Contrary to the dissent's view, Dallas and Vesprey establish that a defendant's repetition of similar but distinct criminal acts, sharing a modus operandi and ostensibly perpetrated pursuant to the same general plan or scheme, but occurring at different times and each aimed at the capture of a separate increment of illicit gain, do not constitute a single "criminal transaction" within the meaning of CPL 40.10(2)(b). In each case, in order to reach the conclusion that the prosecutions did not arise from the same criminal transaction, it was necessary to determine that neither prong of the statutory definition of the term "criminal transaction" - i.e., neither CPL 40.10(2)(a) ("a single criminal incident") nor CPL 40.10(2)(b) ("so closely related in criminal purpose or objective as to constitute . . . a single criminal venture") - was satisfied, since if either prong was satisfied, it would have followed that the charges arose from a single transaction. Accordingly, in Dallas, we held that the acts at issue "were not so closely related as to constitute a single 'criminal transaction'" (46 AD3d at 490), with a citation to CPL 40.10(2), thereby incorporating both prong (a) and prong (b) of the definition. Similarly, in Vesprey, we held that "the different acts were not 'so closely related in criminal purpose or objective as to constitute . . . a single criminal venture'" (183 AD3d at 216), quoting the words of CPL 40.10(2)(b). Thus, the dissent's assertion that these decisions "do not apply the relevant definition of criminal transaction" is mistaken.
Here, the separate acts of Medicaid fraud charged in the two indictments, although related, cannot be said to have been so "integrated" or "interdependent" as to constitute a single criminal venture (People v Lynch, 25 NY3d 331, 336 [2015]).[FN2] The acts, although following a common scheme or plan, occurred at different times, and inflicted separate harms, even if the true victim is deemed to have been the same one (i.e., the Medicaid program). If it were otherwise, any series of separate criminal acts perpetrated against the same victim pursuant to a common scheme, but inflicting distinct injuries - such as periodic demands for payment from the same storekeeper as part of a continuous protection racket, or repeated uses of a stolen credit card at the same store, or repeated uses of the same means to gain illicit entry into the same building to carry out similar criminal acts - could not be separately prosecuted. We do not believe that the double [*3]jeopardy statutes were intended to confer this benefit on habitual criminals.[FN3]
Although petitioner sought relief "in accordance with CPL 40.20 and/or CPL 40.40" in Supreme Court, in this Court he appears to rely solely upon CPL 40.40, which, under the circumstances it specifies, precludes a second prosecution in the same court even if the second prosecution, under CPL 40.20, would have been permissible in a different court. While the two criminal actions here at issue were both brought in New York County Supreme Court, relief is not available to petitioner under CPL 40.40, because that statute applies only if the earlier charge and the latter charge would have been joinable in one accusatory instrument "by reason of being based upon the same criminal transaction, pursuant to [CPL 200.20(2)(a)]" (CPL 40.40[1] [emphasis added]). CPL 200.20(2)(a), in turn, provides, in pertinent part, that two offenses are joinable if "[t]hey are based . . . upon the same criminal transaction, as that term is defined in [CPL 40.10]."[FN4] Thus, the same definition of the term "criminal transaction" applies in both CPL 40.20 and CPL 40.40, and, for the reasons already discussed, the current prosecution of petitioner is not based on the same "criminal transaction" as was the previous indictment. Accordingly, CPL 40.40 does not afford petitioner grounds for dismissal of the present indictment.
Finally, we note that Justice Jackson has elected, pursuant to CPLR 7804(i), not to appear in this proceeding. All concur except Kern, J. who dissents
in a memorandum as follows:




KERN, J. (dissenting)
 

This CPLR article 78 proceeding seeks a writ of prohibition permanently enjoining respondents from subjecting petitioner Raymond Dieffenbacher to any further prosecution in this matter and an order dismissing all charges against him under Indictment No. 2278/2019. I would grant the petition and dismiss the charges on the ground that they are barred pursuant to the double jeopardy provisions of CPL 40.40. Accordingly, I respectfully dissent.
In 2014, the Attorney General's Medicaid Fraud Control Unit (MFCU) commenced an investigation into three pharmacies with overlapping and common ownership, including First Choice Pharmacy (First Choice). The pharmacies were allegedly violating Medicaid rules by, among other things, paying kickbacks to Medicaid customers who filled prescriptions for HIV medications and submitting claims to Medicaid for "refills" that were not dispensed. As described by the Attorney General, the investigation included undercover operations that involved sending an agent posing as a Medicaid recipient to the pharmacies with a prescription for an HIV medication. The agent would ascertain whether a kickback would be paid for presenting the prescription. Further, the prescription would contain refills, but the agent would intentionally not request that the medication be refilled and would not return to pick up any refills. Instead, MFCU waited to [*4]see whether the pharmacy would submit reimbursement claims for refills that were not dispensed. During three undercover operations conducted at First Choice between August 27, 2015 and October 28, 2016, petitioner, who was vice president of First Choice, gave the agent a kickback of $60 to $100 in cash plus a NYC Metrocard for filling their prescription at the pharmacy. Claims for each original prescription and for refills associated with each prescription were submitted to and paid by Medicaid even though the refills were not requested or dispensed, in a scheme called "auto-refilling."
During its undercover operations, MFCU discovered that the District Attorney's Office of New York County (DANY) was investigating individuals associated with First Choice and the other pharmacies. Concerned that DANY's investigation would become known to individuals associated with First Choice, the Attorney General raised the issue with DANY but was unable to persuade it to change course. Accordingly, on March 13, 2017, MFCU applied for a warrant authorizing investigators to search First Choice. Among the items seized during the March 16, 2017 search of First Choice were notebooks memorializing the cash kickbacks that had been paid to patients and more than 800 bottles of prescription HIV medications that appeared to have been "diverted," or obtained from a source other than a licensed pharmaceutical wholesaler.
On the day that it conducted the search of First Choice, MFCU arrested petitioner while he was attempting to board a plane bound for the Caribbean. MFCU filed a felony complaint alleging, among other things, that petitioner was the vice president of First Choice, that First Choice was an enrolled provider in MetroPlus, a Medicaid-funded managed care organization (MCO), and that petitioner paid an unlawful kickback to a patient to fill a prescription for HIV medication at First Choice and submitted false reimbursement claims to Medicaid for prescription refills that were never dispensed.
Following petitioner's arraignment, the court adjourned his case several times on consent, while the parties discussed the possibility of his cooperation with MFCU's ongoing investigation into First Choice. In May 2018, with no cooperation agreement reached, the court informed the parties that it would no longer exclude speedy trial time under the Criminal Procedure Law (CPL 30.30). On August 2, 2018, a New York County grand jury returned Indictment No. 2582/18 (First Indictment) charging petitioner with grand larceny in the third degree (Count One), health care fraud in the fourth degree (Count Two), and medical assistance provider: persons acting in concert with a medical assistance provider, prohibited practices (Social Services Law § 366-f[1][b],[4]) (Count Three). On February 14, 2019, nearly two years after his arrest, petitioner pleaded guilty to all three counts of the First Indictment before the Hon. Melissa Jackson. On April 25, 2019, Justice Jackson sentenced [*5]petitioner to five years' probation, concurrent on each count, and restitution in the amount of $8,934.88.
On July 18, 2019, a few months after petitioner pleaded guilty to the First Indictment and was sentenced, MFCU obtained another indictment (Second Indictment) against him, three other individuals also associated with First Choice, and three corporate defendants, including First Choice. The Second Indictment (No. 2278/2019) again charges Dieffenbacher with grand larceny (Counts One and Two) and alleges that between January 1, 2013 and December 21, 2016, he, other individuals associated with First Choice, and First Choice stole more than $1 million each from Amida Care and VNS Choice, two Medicaid-funded MCOs. The Second Indictment also again charges petitioner with health care fraud (Counts Three and Four) and alleges that he, other First Choice individuals, and First Choice, with intent to defraud a health plan, submitted false claims and omitted material information from claims submitted to the New York Medicaid Program, directly and indirectly through Medicaid-funded MCOs, and wrongfully received in excess of $1 million to which they were not entitled.
The Second Indictment also includes a count of money laundering in the first degree (Count Five) against petitioner, a codefendant, First Choice and another corporate defendant named Express Audit Prevention Corp. (Express Audit), as well as a count of scheme to defraud in the first degree against petitioner, other individuals associated with First Choice, and First Choice (Count Eight). Count Five alleges that between May 5, 2016 and November 2016, petitioner and codefendant Irina Pichkhadze, as high-level managerial agents acting on behalf of First Choice and Express Audit, deposited checks into an Astoria Bank account knowing that the funds represented the proceeds of a class B felony, that the transactions were designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified criminal conduct, and that the total value of the property involved in such transactions exceeded $1 million. Count Eight alleges that petitioner, other individuals associated with First Choice, and First Choice engaged in a scheme constituting a systematic, ongoing course of conduct with intent to defraud more than one person.
Petitioner then filed a motion with the trial court to dismiss the Second Indictment, arguing that the second prosecution is barred by CPL 40.40 because the crimes alleged in the Second Indictment were joinable in the First Indictment (which resulted in a guilty plea) as part of the same criminal transaction but were not joined. The Attorney General told the court that the First Indictment had been a "holding" indictment and that between September 20, 2018, when petitioner was arraigned on the First Indictment, and February 14, 2019, when he pleaded guilty, MFCU had advised petitioner that "it was conducting a larger investigation into First [*6]Choice and that a superseding indictment against [him] would likely be forthcoming once MFCU's investigation was complete." At an appearance on March 12, 2020, Justice Jackson orally denied the motion.
"[T]he extraordinary remedy of prohibition lies to review double jeopardy claims" (Di Lorenzo v Murtagh, 36 NY2d 306, 309 [1975]). CPL 40.40 prohibits successive prosecution of offenses based upon the same criminal transaction that could have been joined in a single accusatory instrument:
"1. Where two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, pursuant to paragraph (a) of subdivision two of section 200.20, such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article" (emphasis added).
In order for CPL 40.40 to apply to bar a successive prosecution, certain
conditions must be satisfied:
"2. When (a) one of two or more joinable offenses of the kind specified in subdivision one is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred."
Accordingly, we must determine whether petitioner's offenses were joinable in a single accusatory instrument by reason of their being based upon the same criminal transaction and whether the Attorney General possessed legally sufficient evidence to support a conviction for the uncharged offenses at the time petitioner pleaded guilty to the First Indictment. If those conditions are met, the Second Indictment must be dismissed.
The first issue that must be resolved is whether the crimes charged in the Second Indictment are part of the same criminal transaction as the crimes charged in the First Indictment. CPL 40.10(2) defines a "criminal transaction" as:
"conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture."
"The definition contains two alternative tests to determine whether [multiple] offenses are part of the same criminal transaction. Paragraph (a) [pertaining to conduct constituting a single criminal incident] involves consideration of the nature, timing and circumstances of the offenses" (People v Lynch, 25 NY3d 331, 334 [2015]).Paragraph[*7](b), pertaining to conduct constituting a single criminal venture, "tends to be more applicable to crimes that involve planned, ongoing organized criminal activity, such as conspiracies, complex frauds or larcenies, or narcotic rings" (id. at 335, quoting New York Pretrial Criminal Procedure § 2:6 [2d ed 7 West's NY Prac Series]). 
In the present case, the offenses charged in both the First and Second Indictments are part of the same criminal transaction pursuant to paragraph (b), because they are "so closely related in criminal purpose . . . as to constitute elements or integral parts of a single criminal venture" (CPL 40.10[2][b]). The crimes charged in both indictments largely mirror each other and involved "planned, ongoing organized criminal activity" consisting of complex larcenies and frauds against Medicaid (see Lynch, 25 NY2d at 335).[FN5] Indeed, petitioner and others associated with First Choice are accused of defrauding Medicaid out of millions of dollars over the course of years by having First Choice pay kickbacks and submit fraudulent claims for reimbursement. This is exactly the type of conduct that Lynch described as constituting a single criminal venture (id. at 335-336).
Moreover, the Attorney General explicitly acknowledged at the arraignment of petitioner on the Second Indictment that both indictments involved the same scheme to defraud the Medicaid program, by stating as follows:
"Your Honor, this case involves a pharmacy located in Harlem [First Choice] dealing primarily with HIV medication. Over the course of time from 2013 to 2016, this Defendant and other related managers of the pharmacy conducted a scheme of defrauding the Medicaid program. We believe millions of dollars regarding HIV medications that were either - they were paying patients kickbacks to use their Medicaid numbers to submit claims to the government for either pills that were not dispensed at all or for diverted medications that weren't purchased from legitimate wholesalers and this conduct just continued and really escalated until we executed a search warrant in March 2017 at the location. At that time the defendant was charged with a single act regarding an undercover shop at the pharmacy, that was the charge. The defendant has pled guilty. This is a scheme that predated and continued past that time period."
Additionally, the Attorney General conceded that the First Indictment was simply a "holding" indictment and that the evidence obtained in both indictments was derived, in large part, from one multi-year investigation of petitioner and his associates and the execution of a single search warrant on the day petitioner was arrested as he attempted to board a plane bound for the Caribbean. Thus, it is clear that the offenses charged in the two indictments arose out of the same criminal transaction (see CPL 40.10[2][b]).
It is not disputed that the other requirements for applying CPL 40.40 are satisfied. The Attorney General's office admitted that it could [*8]have charged petitioner in a single accusatory instrument based on its statement in open court that it intended to file a superseding indictment, which it never did. Further, there is no assertion by the Attorney General that MFCU did not possess evidence legally sufficient to support a conviction of petitioner for the uncharged offenses, including the money laundering and scheme to defraud counts, when petitioner entered his guilty plea on the First Indictment just five months before the Second Indictment was filed. Accordingly, the petition should be granted and the Second Indictment should be dismissed.
The two decisions relied on by the majority to support its position that the offenses in this case do not arise out of the same criminal transaction are inapposite as they do not apply the relevant definition of criminal transaction as set forth in CPL 40.10(2)(b). As the Court of Appeals discussed in Lynch (25 NY3d at 335), both People v Dallas (46 AD3d 489 [1st Dept 2007], lv denied 10 NY3d 809 [2008]) and People v Vesprey (183 AD2d 212 [1st Dept 1992], lv denied 81 NY2d 894 [1995]) involved the application of paragraph (a) of the definition of criminal transaction — whether the acts were "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident" (CPL 40.10 [2][a]). In direct contrast, this case requires the application of paragraph (b) of the definition of criminal transaction — whether the acts were "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture" (CPL 40.10[2][b]).
In Dallas and Vesprey, the two prosecutions were held not to be part of the same criminal transaction based on the definition of criminal transaction contained in paragraph (a) of CPL 40.10(2) because the acts that comprised the two different prosecutions were not "so closely related [or] connected in point of time and circumstance of commission as to constitute a single criminal incident." Neither of these cases involved complex frauds and larcenies that were part of a single ongoing criminal venture. Both cases concerned separate investigations by separate prosecutors of the commission of similar crimes, using stolen credit cards and selling false identification, ad seriatim, against different victims. In Dallas, defendant was charged in Kings County with criminal possession of a forged instrument and then charged in New York County with possession of different counterfeit documents. We held that "[t]he fact that defendant was in the business of selling counterfeit identifications, and that his conduct in both counties may have been admissible in both prosecutions pursuant to People v Molineux [citation omitted], did not make his possession of different documents at different times a single criminal transaction" (46 AD3d at 490). In Vesprey, the defendant was charged in state court with using stolen credit cards and was then subsequently [*9]charged in federal court with purchasing stolen credit cards. Significantly, this Court noted in Vesprey:
"In this case, the Federal and State indictments focused on entirely different and discrete acts with no single purpose or over-all objective [and] . . . the fact that a defendant commits the same type of crime in an ad seriatim fashion, will not insulate him from punishment for the successive crimes" (id. at 217).
The decision relied on by the Attorney General, People v Luongo (47 NY2d 418 [1979]), to support its argument that double jeopardy does not apply because different victims are involved in the two indictments is completely inapplicable. In Luongo, the Court held that double jeopardy did not apply pursuant to CPL 40.20 based on the specific exception in CPL 40.20 that permits separate prosecutions for injuries to different victims. However, petitioner is relying on CPL 40.40, not on CPL 40.20. CPL 40. 40 was not applicable in Luongo because the prosecutions occurred in different jurisdictions and could not have been joined in a single accusatory instrument. As the majority correctly notes, there is no requirement under CPL 40.40 that the two prosecutions involve the same victims for double jeopardy to apply. Thus, even though the two indictments do involve the same victim, Medicaid, this is not a requirement under CPL 40.40.
This Court never would have had to address the issue of double jeopardy if the prosecutor had obtained a superseding indictment before petitioner pleaded guilty to the First Indictment. However, '"[w]here the evidence against a person is in the prosecutor's hands, he [or she] may not—as a player in a game of chance—deal out indictments one at a time'" (People v Lindsly, 99 AD2d 99, 101-102 [2d Dept 1984], appeal withdrawn 62 NY2d 987 [1984]).
Based on the foregoing, I would grant the petition for a writ of prohibition, permanently enjoin respondents from subjecting petitioner to any further prosecution in this matter and dismiss the charges contained in Indictment No. 2278/2019 against petitioner. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020



Footnotes

Footnote 1: The other prong of the statutory definition of "criminal transaction" - acts "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident" (CPL 40.10[2][a]) - plainly does not apply here, as the different instances of fraud were not one "incident."

Footnote 2: That Dallas and Vesprey are referenced in Lynch only in the course of the latter decision's discussion of CPL 40.10(2)(a) (see 25 NY3d at 335, 336) does not mean that CPL 40.10(2)(b) was not also at issue in Dallas and Vesprey.

Footnote 3: We note that the foregoing applies whether the different managed care organizations referenced in the two indictments are considered to have been petitioner's victims (as argued by the Attorney General) or the Medicaid program itself is considered to have been the true victim of all of the misconduct alleged in both indictments (as argued by petitioner and the dissent). Thus, we need not decide whether the exception to double jeopardy for separate prosecutions of different offenses that "involve[] death, injury, loss or other consequence to . . . different victim[s]" (CPL 40.20[2][e]) would apply, had the offenses charged in the two indictments been "based upon the same act or criminal transaction" (CLP 40.20[2]).

Footnote 4: That the two offenses might have been joinable in one accusatory instrument under other paragraphs of CPL 200.20(2) does not constitute grounds for relief under CPL 40.40.

Footnote 5: The crimes charged in the Second Indictment against Dieffenbacher are the same as those charged in the First Indictment except that the Second Indictment includes two additional counts for money laundering and scheme to defraud. These additional counts are plainly part of the same criminal venture described in both indictments. The money laundering count alleges that Dieffenbacher deposited money stolen from Medicaid into a bank account to conceal the nature and source of the proceeds of his criminal conduct. The scheme to defraud count relates to the overarching scheme to defraud Medicaid using the methods previously discussed.